UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEVI DITTA,

       Petitioner,                                       Civil No. 13-14634

v.                                                         Hon. John Corbett O'Meara

DAVID BERGH,

       Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION FOR LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Levi Ditta was convicted in the Cheboygan Circuit Court of two counts of safebreaking, Michigan Compiled Laws § 750.531, one count of racketeering, Michigan Compiled Laws § 750.159i(1), one count of conspiracy to commit racketeering, Michigan Compiled Laws § 750.159i(4), two counts of breaking and entering a building with intent to commit larceny, Michigan Compiled Laws § 750.110, and six counts of possession of burglar's tools, Michigan Compiled Laws § 750.116. He filed this action, his second pro se petition for a writ of habeas corpus, claiming: 1) the prosecutor committed misconduct at trial, 2) Petitioner was denied the effective assistance of counsel, 3) the trial court displayed bias against Petitioner, 4) Petitioner's right to present an alibi defense was denied when the prosecutor was permitted to change the date of one of the offenses, 5) Petitioner was denied the effective assistance of appellate counsel, and 6) the cumulative effect of the trial errors prevented Petitioner from being acquitted. (Dkt. 1.) Having reviewed the Petition, the warden's response, and the state-court record, the Court finds that the petition was untimely filed and that Petitioner is not entitled to habeas relief with respect to any of

1

his claims. The Court will thus deny the petition. The Court will also deny Petitioner a certificate of appealability, but it will grant him permission to proceed on appeal in forma pauperis.

## I. Background

Petitioner's convictions stem from a series of break-ins occurring in Northern Michigan in the Fall of 2006.

At trial, the evidence presented indicated that on or about October 20, 2006, four businesses were broken into during early morning hours by forcible entry in Cheboygan County, Michigan: Country Café, Whistle Stop Restaurant, Toasty's Yacht Club, and Rite Aid Pharmacy.

The manager of Country Café, Mary Getzmeyer, testified that the back door was pried open and confirmed thirty dollars missing from the cash register. The co-owner of Whistle Stop Restaurant, Patty Croft, reported a glass door being broken but nothing of value was missing. The previous owner of Toasty's Yacht Club, Timothy Torrice, testified that at least four hundred dollars and seventy packs of cigarettes were missing from the business. An officer who responded to the Rite Aid Pharmacy alarm, Adrian Karr, testified that his initial impression of observing the footprint evidence was that there were two people on the roof, but he opined during the morning of his testimony that the casted footprints were from one person.

Petitioner was identified as one of the perpetrators of these break-ins by his accomplices. Co-defendant Gerald Benton testified that he entered the places along with Petitioner during the first three incidents and assisted him with the Rite-Aid break-in by driving and acting as a look out for the authorities.

On the early morning hours of October 24, 2006, three more Cheboygan County businesses were broken into: Music Masters, Kingston Theater, and Johnnie's Bar. Owners Herverd Canell and

Gary Woodgate along with an employee Lynn Tellefsen testified that the businesses' were entered by the prying open of a door or a window. A total of about three hundred dollars was reported missing from both Music Masters and Kingston Theater. Woodgate testified that the safe of Johnnie's Bar, which had over two-thousand dollars inside, was later found empty by a person in the woods.

Benton testified that he dropped Petitioner off in Petitioner's girlfriend's vehicle near these locations and again served as a lookout while Petitioner broke into the businesses. He testified that during these and other break-ins Petitioner would call him on a cell phone when he was finished with the burglary. Benton testified that the cell phones used during the break-ins belonged to Petitioner
and his girlfriend, Ms. Watts.

On November 6, 2006, three other businesses in nearby Emmet County were broken into: Meadows Bar, Bayview Laundry, and Evergreen Lawn Care. Todd Larson, owner of Meadow's Bar, testified that when he arrived to his business the following morning, he observed that things were strewn about, desk drawers were open, and around fourteen hundred dollars was missing from the safe and money box. Thomas Goeke stated that when he arrived to his Bayview Laundry business the next morning, the office drawer that contained three hundred dollars was empty, and he noticed pry marks on the doors and coin machine. Goeke also testified that his surveillance cameras recorded an unauthorized, male subject in a green hooded sweatshirt and white sneakers in his business during the break-in. Cheryl Renaud testified that when she arrived to Evergreen Lawn Care that morning, she found holes drilled into the window and the office safe was found upside down and emptied of approximately two thousand dollars.

3

During the early morning hours of November 16, 2006, three additional break-ins occurred in Emmet County: Jurek's Market, Spirit Gas Station and, Bayview Laundry for a second time. Christopher Jurek stated that he was informed by his alarm company that a door had been tampered with that set off the motion detector alarm. When he arrived to the business, nothing of value was missing, but the door did have pry marks near the latch.

Rebecca Glazier, Benton's girlfriend, testified that she was pressured by Benton to drive and drop off both Petitioner and Benton in front of Jurek's Market and was told to drive around until they were done. She stated that after about five minutes she noticed a truck in the back of the store and continued to drive around until she found both men at the top of a hill. Glazier testified that they both complained about her being a terrible driver, and Benton said that the silent alarm had gone off. Benton then proceeded to drive her vehicle to Spirit Gas Station where both Petitioner and Benton left the car for about forty minutes and returned with a large garbage bag. They later drove back to her residence and split the contents of the garbage bag between them, which were cartons of cigarettes.

Goeke testified that on this same day, his Bayview Laundry business was broken into again and money was missing from his cash drawer, and his video surveillance camera was tampered with.

During the early morning hours of November 20, 2006, two final businesses were broken into in Emmet County: U-Haul and Jet's Pizza. The then owner of U-Haul, James English, testified that his business was broken into thru a side door, that he found Benton's identification left inside on the floor, and that over three-hundred dollars was unaccounted for. Owner Elizabeth Moore described how there were no signs of forced entry to the Jet's Pizza establishment, but about six thousand dollars was missing from the safe.

4

Benton explained that during these series of break-ins, Petitioner carried a backpack which held a crowbar for prying open doors and that he and Petitioner wore similar shoes, hooded sweatshirts, gloves, and masks throughout many of the break-ins.

Megan Watts and Marsha Pettyjohn also testified about the various break-ins, a backpack, money taken, and how they got near the areas of the break-in sites.

James Young, a detective who specialized in audio and video forensic work, concluded that after analyzing the Bayview Laundry video surveillance of the vehicle it was inconclusive and he could not say for sure that the vehicle was Megan Watts' 2005 Kia.

Detective Nightingale confirmed the dates and places of the break-ins as well as the possible vehicles used according to various testimonies. His analysis of the telephone call records made between Petitioner and Benton during the time frames of the break-ins was consistent with Benton's testimony that the phones were used to communicate with each other although the telephone company instructed him that the phone records were not complete. Detective Nightingale also testified that the fingerprints collected from numerous sites did not match Petitioner or Benton.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised the following claim:

> I. The trial court erred when it admitted evidence, under MRE 404(B), of Mr. Ditta's drug use and of a subsequent breaking and entering in Florida because the evidence created unfair prejudice, was needlessly cumulative, confused the issues and misled the jury, in violation of MRE 403 and Mr. Ditta's constitutional right to a fair trial.

Petitioner also filed his own pro se brief, raising the following additional claims:

> I. Did the prosecutor present sufficient evidence to sustain the criminal enterprise convictions?
>
> II. Was the defendant denied a fair trial through the prosecution's withholding of evidence?

5

> III. Was the defendant denied effective assistance of counsel through his trial?
>
> IV. Was the defendant denied a fair trial where the prosecutor committed a fraud upon the court?
>
> V. Was the defendant deprived of a fair trial when the prosecutor caused a safe to be improperly placed on display in the courtroom for the entire time of the trial?

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Ditta*, No. 289604, 2010 WL 2016306, at *1, 2 (Mich. Ct. App. May 20, 2010). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. On February 7, 2011, the Michigan Supreme Court denied the application by form order. *People v. Ditta*, 794 N.W.2d 41 (Mich. 2011) (table).

On March 6, 2012, Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. *Ditta v. Berghuis*, Eastern District of Michigan Case No. 5:12-cv-11012. Simultaneously, Ditta filed a motion to stay his habeas proceedings so he could return to the trial court to file a motion for relief from judgment. That motion was granted by this Court on March 15, 2012, and Ditta was ordered to file a motion for relief from judgment in the trial court within 60 days of the order, and then to file a motion to lift the stay and an amended petition within 60 days of the "conclusion of the state court proceedings." (R. 6, Order Granting Stay, at 4, Case No. 5:12-cv-11012.)

Petitioner complied with the front-end of the stay order, and he filed his motion for relief from judgment in the trial court on May 10, 2012, within the 60-day time period. The motion contained the following claims:

> I. Defendant was denied his right to a fair trial by improper and unsupported use of drug use as motive for a theft offense.
>
> II. Defendant was denied his right to a fair trial by the court's improper denial of the

6

spousal privilege.

III. Defendant was denied his right to a fair trial by the repeated instances of judicial abuse of discretion.

IV. Defendant was denied the effective assistance of appellate counsel where his appellate attorney did not raise the above issues in his appeal by right, as well as incompetently arguing raised issues.

The trial court denied the motion for relief from judgment because the claims were meritless. Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Ditta*, No. 310537 (Mich. Ct. App. Oct. 24, 2012). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but that court also denied relief under Rule 6.508(D). *People v. Ditta*, 832 N.W.2d 228 (Mich. Sup. Ct. June 25, 2013) (table).

Under the terms of the stay order, Petitioner had 60 days from that date, or until August 26, 2013, to file his motion to lift the stay and his amended petition. He failed to do so. Instead, on November 7, 2013, he filed the instant action.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs this case, "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. See *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

7

of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Michigan Court of Appeals' decision on direct appeal was the last explained decision from the state courts "on the merits" of Cox's habeas corpus claims. Accordingly, the Court reviews that decision under the deferential standard of § 2254(d). See *Davis v. Rapelje*, 33 F. Supp. 3d 849, 855-59 (E.D. Mich. 2014).

### III. Discussion

A. Timeliness of Petition

Rather than assert that the petition was untimely filed under 28 U.S.C. § 2244(d), Respondent asserts that the claims raised in Petitioner's state post-conviction review proceeding should be denied because Petitioner failed to comply with terms of the Court's order staying his first habeas case. The Court finds that the entire petition is subject to dismissal for failure to comply with the statute of limitations.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one-year limitations period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could

8

have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

AEDPA's one-year limitations period is tolled when a prisoner seeks collateral review of his conviction in state court. *Wall v. Kholi*, 131 S. Ct. 1278, 1282, 179 L. Ed. 2d 252 (2011)("the 1-year limitation period is tolled during the pendency of 'a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim.' § 2244(d)(2)"). Absent equitable tolling, a petition for writ of habeas corpus must be dismissed where it has not been filed before the limitations period expires. See 28 U.S.C. § 2244(d)(1); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

The period of limitations began running in this case on May 8, 2011. That is the day after Petitioner's deadline for filing a petition for a writ of certiorari in the United States Supreme Court–the Monday following 90 days after the Michigan Supreme Court denied relief during his appeal of right on February 7, 2011. See *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009). The total time between the commencement of the statute of limitations and the initiation of this action when Petitioner signed and dated his current petition on November 5, 2013, is 912 days.

The effect Petitioner's first habeas action had on the statute of limitations will be discussed immediately below, but setting that issue aside for the moment, the period of limitations ran for a period of 367 days–or more than a year–until Petitioner filed his motion for relief from judgment in the trial court on May 10, 2012. That is, setting aside any effects of the prior habeas action, the limitations period expired before Petitioner filed for state post-conviction review.

AEDPA's one-year limitations period can be tolled when a prisoner seeks state collateral review of his conviction under § 2244(d)(2). See *Wall, supra.* However, as here, a state court

9

post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no time remaining to be tolled. *Hargrove v. Brigano*, 300 F.3d 717, 718 n.1 (6th Cir. 2002); see also *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003). Furthermore, even discounting the 412 days Petitioner's state post-conviction review proceeding was pending from the 912 days in which the statute ran are not enough to render the petition timely filed.[1] This would still leave 500 days which ran on the limitations period.

The petition is therefore time barred unless Petitioner demonstrates grounds for equitable tolling. *Holland v. Florida*, 130 S. Ct. 2549, 2560; 177 L.Ed.2d 130 (2010). A petitioner is entitled to equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 2562 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is used "sparingly" by the federal courts. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). The party seeking equitable tolling bears the burden of proving that he is entitled to it. *Id*.

The time during which Petitioner's first habeas action was pending did not act to equitably toll the limitations period. In *Duncan v. Walker*, 533 U.S. 167, 172 (2001), the Supreme Court held that a federal habeas petition does not statutorily toll the limitations period under § 2244(d)(2). The *Duncan* Court, however, did not resolve the question of whether AEDPA's one-year statute of limitations is subject to equitable tolling where the initial federal petition is timely, as here, but the petition is disposed of on exhaustion grounds. 533 U.S. at 180 (noting the "potential unfairness to litigants who file timely federal habeas petitions that are dismissed without prejudice after the

---

[1] Petitioner filed his motion for relief from judgment on May 10, 2012, and the Michigan Supreme Court denied relief on June 25, 2013. This is a period of 412 days.

10

limitations period has expired"). This problem gave rise to the "stay-and-abey" procedure created by the Supreme Court and used to resolve Petitioner's first habeas petition. See *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005); *Rhines v. Weber*, 544 U.S. 269 (2005).

The problem for Petitioner is that he did not comply with the terms of the stay order. The order staying Petitioner's first habeas case required him to file his state post-conviction review proceeding within 60 days and then file a motion to reopen his first case and an amended petition within 60 days of completing state review. After Petitioner completed state post-conviction review, however, he did not move to reopen his case within 60 days as required by the order. Instead, he waited over four months to file this second action. That is, by failing to comply with the terms of the stay order, Petitioner failed to pursue his rights diligently, and he has not pointed to any extraordinary circumstance that stood in his way to prevent him from timely moving to reopen his first petition. The delay in filing this case in a timely manner was not beyond Petitioner's control, and therefore he is not entitled to equitable tolling for the time his first habeas petition was pending. See *Fail v. Hubbard*, 315 F.3d 1059, 1062 (9th Cir. 2001).

Moreover, even if the Court were to grant Petitioner the maximum amount of tolling–from the time he initiated his first habeas petition until the time he completed state post-conviction review–his second petition was still untimely filed. As stated, Petitioner signed and dated his first habeas petition on February 20, 2012. The Michigan Supreme Court denied post-conviction relief on June 25, 2013. That is a period of 492 days. Subtracting that period from the 912 days from the initiation of the limitations period on May 8, 2011, until he signed the instant petition on November 5, 2013, still results in 420 days running on the limitations period. Accordingly, by all calculations, the petition was untimely filed and subject to dismissal under §2244(d).

Finally, the fact that Petitioner may be ignorant of the law does not provide a basis for equitable tolling. Neither a prisoner's pro se status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling. *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002); *Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[W]e have never accepted pro se representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness"). Accordingly, the Court finds that Petitioner failed to comply with the one-year statute of limitations, and his petition will be denied on that basis.

B. Merits Review

Despite the fact that the petition was untimely filed, the Court will nevertheless briefly discuss the substance of his claims. The petition will also be denied on the alternative basis that none of his claims have merit.

1. Prosecutorial Misconduct

Petitioner raises sixteen allegations of prosecutorial misconduct. Dkt. 1, Page ID, 13-17. Petitioner asserts that the prosecutor overcharged him by adding a charge of continuing criminal enterprise and adding charges of possession of burglar tools. He alleges the prosecutor disparaged Petitioner by calling him a career criminal, dishonest, and other things of that sort. He alleges that the prosecutor informed the jury that the presumption of innocence did not mean Petitioner was necessarily innocent. He asserts that the prosecutor unfairly lowered its burden of proof by warning the jury that it did not have the amount of physical evidence that jurors may have come to expect by watching police dramas on television. He alleges that the prosecutor withheld telephone recordings of conversations he had while in jail. He alleges that the prosecutor prejudicially displayed a safe in the courtroom. He alleges that the prosecutor's opening statement differed from

the witnesses' actual testimony, and that she mentioned his drug use before evidence of it was presented. He argues that the prosecutor bolstered the credibility of witnesses by asserting that they had not reason to lie. He asserts that the prosecutor knowingly allowed Benton to commit perjury, and threatened his wife with prosecution if she invoked her spousal privilege not to testify against Petitioner. Lastly, he asserts that the prosecutor wrongfully offered evidence of prior bad acts.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); see also *Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*,    U.S.   , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Court has carefully reviewed the record and finds that none of he complained-of actions constituted misconduct to the extent that it infected the trial with such unfairness as to make Petitioner's convictions a denial of due process. Respondent has fully and accurately responded to each of Petitioner's allegations. See R 13, Answer, pp. 29-59. The Court agrees with Respondent's analysis. Almost all of Petitioner's complaints are merely examples of aggressive but not inappropriate conduct by a prosecutor seeking to prove her case. Moreover, the evidence of Petitioner's guilt was quite strong and relied on the credibility of prosecution witnesses Benton, Watts, Glazier, and Pettyjohn. Devastating for Petitioner's case was the fact that Benton's testimony was corroborated by Officer Nightingale's analysis of the phone records. The accomplices'

potential motivations for testifying against Petitioner were fully and fairly revealed at trial, and the jury's obvious decision to believe their testimony is what resulted in Petitioner's conviction–not any perceived misconduct by the prosecutor. For these reasons and the reasons stated in Respondent's answer, the Court finds that none of Petitioners myriad claims of prosecutorial misconduct merit relief.

2. Ineffective Assistance of Counsel

Petitioner next lists twenty allegations of ineffective assistance of trial counsel. Most of the claims assert that counsel should have objected to many of the instances of alleged misconduct discussed above. Petitioner also claims that his counsel: 1) failed to move to remove jurors during jury selection, 2) failed to investigate Petitioner's prior bad acts evidence, 3) failed to properly prepare for Benton's testimony, 4) failed to impeach his accomplices with prior convictions, 5) failed to obtain an expert witness on vehicle comparisons, 5) failed to cross examine prosecution witnesses with prior inconstant statements, 6) failed to object to incorrect jury instructions, 7) failed to call twenty-two defense witnesses, and 8) abandoned the defense in frustration after completing cross examination of the final prosecution witness.

In order to prevail on a claim of ineffective assistance of counsel, Petitioner "must show both that his counsel's performance was deficient and that the deficient performance prejudiced the defense." *Hodges v. Colson*, 711 F.3d 589, 613 (6th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). To show deficiency, Petitioner must establish that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To show prejudice, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

14

been different." *Id.* at 694. Both components need not be addressed if Petitioner has failed to meet one of them. *Id*. at 697.

Again, Respondent has fully and accurately responded to each of Petitioner's many allegations. See Answer, pp. 62-73. "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard," *Harrington v. Richter*, 562 U.S. 86, 105 (2011).Respondent has provided reasonable arguments supporting each of counsel's actions. Moreover, the Constitution does not require defense counsel to pursue every imaginable trial strategy, whether likely to bear fruit or not. See *Engle v. Isaac*, 456 U.S. 107, 134 (1982). "[E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment" and thus often "use objections in a tactical manner." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006).

The short of the matter, however, is that Petitioner has not shown how any of his counsel's actions or inactions would have, with reasonable probability, changed the outcome of the trial given the testimony against him by his accomplices. As stated, the case against Petitioner was very strong, and he was convicted as a result of the evidence presented against him, not as a result of any perceived shortcomings in his trial counsel's performance. This claim is without merit.

3. Trial Court Bias

Petitioner next asserts that the trial judge was biased against him. He enumerates fourteen ways that the judge made unfair rulings in favor of the prosecution, otherwise assisted the prosecution, and inhibited the defense.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal

before a judge with no actual bias against the defendant or an interest in the outcome of the case. See *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Trial judges have wide latitude in conducting trials, but must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that they believe the defendant is guilty. See *Brown v. Palmer*, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005). Nothing in the record indicates that the trial court was biased against Petitioner. A review of the record does not reveal any expressions of annoyance, favoritism, or such that indicated partiality or would have given the jury the impression that the court believed Petitioner was guilty. All Petitioner points to are adverse rulings. Such rulings, however, are not sufficient to establish bias or prejudice. *Vliet v. Renico*, 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002). The claim is without merit.

4. Right to Present a Defense

Petitioner next claims that his right to present a defense was violated when the prosecutor was allowed to amend the criminal information to show different dates for some of the crimes. Petitioner asserts that the amendment foiled his alibi defense.

The Sixth Amendment provides, in relevant part, that a criminal defendant has the right to "be informed of the nature and cause of the accusation" against him. U.S. CONST. amend VI. Notice and an opportunity to defend against the charges as guaranteed by the Sixth Amendment are an integral part of the due process protected by the Fourteenth Amendment, and are accordingly applicable in state prosecutions. See *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In re Oliver*, 333 U.S. 257, 273 (1948). The complaint or indictment challenged need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him to prepare a defense. Thus, "[a]n indictment which fairly but imperfectly informs the accused of the

offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); see also, *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982); *Ransom v. Davis*, 613 F. Supp. 430, 431 (M.D. Tenn. 1984), aff'd, 767 F.2d 921 (6th Cir. 1985). "[A] charge is sufficiently specific when it contains the elements of the crime, permits the accused to plead and prepare a defense, and allows the disposition to be used as a bar in a subsequent prosecution." *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992).

During Petitioner's trial the prosecutor motioned the court to amend the information with respect to one set of the charges. Trial Tr. 10/10/08, pp. 154-55. The prosecutor noted that the information listed a portion of Count 3—the thefts from Bay View Laundry and Evergreen Lawn Care—occurring on November 3, 2006, when they actually occurred on November 6, 2006. The prosecutor argued that the original date of November 3, 2006, was simply a clerical error and that the purpose of amending it to November 6, 2006, was to conform the information to the proofs. Defense counsel initially objected to the amendment, but then later admitted that the defense was not prejudiced by the change. The trial court ultimately granted the motion to amend because it "appears to be a typo."

Michigan Court Rule 6.112 instructs that "[t]o the extent possible, the information should specify the time and place of the alleged offense." MICH. CT. R. 6.112(D). And an amendment to the information may take place "before, during, or after trial . . . unless [it] would unfairly surprise or prejudice defendant." MICH. CT. R. 6.112(H). The evidence at trial indicated that the break-ins at Bay View Laundry and Evergreen Lawn Care occurred on November 6, 2006. These dates were well-established prior to trial. Thus, the state trial court acted within its discretion to allow the

prosecutor to amend the information to conform with the proofs. Petitioner nor his counsel should not have been surprised by the amendment, nor was Petitioner prejudiced by the amendment, because the date of those break-ins was not unknown prior to trial.

5. Ineffective Assistance of Appellate Counsel

Petitioner next argues that his appellate counsel was ineffective for failing to raise the claims he raised in his pro se supplemental brief filed during his appeal of right and in his state post-conviction review proceeding. The Court has reviewed all of the claims, however, and it has found none of them have merit. It is not ineffective assistance for appellate counsel to decide not to raise meritless claims. See *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."). Petitioner was not denied the effective assistance of appellate counsel because the claims he alleges counsel should have raised—or assisted Petitioner to better raise on his own—are all without merit.

6. Cumulative Error

In his final claim, Petitioner alleges that he is entitled to habeas relief because the cumulative effect of trial errors deprived him of a fair trial and due process of law. On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005)), cert. denied sub nom *Sheppard v. Robinson*,    U.S.   , 132 S.Ct. 2751, 183 L. Ed. 2d 623 (2012). Therefore, Petitioner is not entitled to relief on this claim.

## IV. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, "a circuit justice or judge"

must issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the Court has rejected Petitioner's habeas claims on the merits, to satisfy § 2253(c)(2), he must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court believes that no reasonable jurist would argue that he should be granted habeas relief. Accordingly, a certificate of appealability will not issue from this Court. However, if Petitioner chooses to appeal the Court's decision, he may proceed in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

For the foregoing reasons, the Court **DENIES** the Petition for Writ of Habeas Corpus and **DENIES** Petitioner a certificate of appealability. Petitioner is **GRANTED** leave to appeal in forma pauperis.

s/John Corbett O'Meara
United States District Judge

Date: January 3, 2017

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, January 3, 2017, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager